IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA ARRINGTON, ET AL.  :
             :  CIVIL ACTION
    v.         :
             :  NO. 17-3950
OPTIMUM HEALTHCARE IT, LLC.  :

## <u>MEMORANDUM</u>

**SURRICK, J.**              **OCTOBER <u>31</u>, 2018**

  Presently before the Court is Plaintiffs' Unopposed Motion for Approval of Settlement of Class and Collective Action (ECF No 59), and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs (ECF No. 57).  For the following reasons, the Motions will be granted.

## I.  BACKGROUND

  Plaintiffs Andrea Arrington, Terry Scott, Lakina Taylor, and Jarmond Johnson, on behalf of themselves and the putative class, request the Court's final approval of a negotiated collective and class action settlement with Defendant Optimum Healthcare IT, LLC, which would resolve their claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the wage hour statutes of various states, including Pennsylvania.  The Court previously granted Plaintiffs' unopposed motion for preliminary approval.  (ECF No. 56.)  Plaintiffs now seek final certification of their settlement class and final approval of the class and collective action settlement.  Plaintiffs also seek approval of attorneys' fees and costs.

### A.  Factual Background

  Optimum is a leading healthcare information technology firm that provides training and support to medical facilities in connection with the implementation of new electronic

recordkeeping systems. (Am. Compl. ¶ 22, ECF No. 44.) Each of the named Plaintiffs were consultants for Optimum who performed training and support services. (*Id*. ¶ 23.) They were classified as independent contractors, who would provide "at the elbow" support and training services to doctors and nurses about the use of new electronic recordkeeping systems and software. (*Id*. ¶¶ 34-35.) Plaintiffs were paid a straight hourly rate for the hours that they worked, regardless of whether they worked more than forty (40) hours in a week. (*Id*. ¶ 33.) Plaintiffs allege that they were misclassified as independent contractors when they were in fact employees. As a result, they were denied overtime pay at 1.5 times their regular rate for hours worked in excess of 40 hours per week, as required by the FLSA and state laws. (*Id*. ¶ 29-33, 38.)

On March 19, 2018, Plaintiffs filed their First Amended Collective and Class Action Complaint. (Am. Compl.) Plaintiffs brought claims under the FLSA and under the wage and hour laws of Pennsylvania, New York, Massachusetts, California, Connecticut, Illinois, North Carolina, Washington, and New Jersey. (*Id*.)

In December 2017, the parties agreed to stay the litigation and engage in private mediation. (ECF No. 30.) As part of these efforts, Optimum provided spreadsheets detailing the time-keeping and payroll data for all members of the Settlement Class. These spreadsheets were used to prepare a detailed damages analysis for purposes of the mediation. On February 28, 2018, the parties attended a full-day in person mediation before retired United States Magistrate Judge Diane Welsh, in Philadelphia. As a result of this mediation, the parties arrived at the material terms of the proposed Settlement Agreement.

On June 8, 2018, an Order was entered granting preliminary certification of the Settlement Class and granting preliminary approval of the Settlement Agreement.  (Prelim. Appr. Order, ECF No. 56.)  The Settlement Class was preliminarily approved as:

> All persons who while performing Go-Live consulting work for Optimum in the United States worked over 40 hours in any workweek between August 31, 2014 and December 1, 2017 (or between August 31, 2011 to December 1, 2017 if the work was performed in New York, or between August 31, 2013 to December 1, 2017 if the work was performed in California) (together these periods are referred to as the "Class Period.")

(Prelim. Appr. Order ¶ 3.)  The Court granted preliminary approval of the proposed settlement after determining that it was "fair, reasonable, and adequate to the Settlement Class."  (*Id.*)

Class counsel self-administered the settlement, as opposed to using a third-party vendor. In other words, they took it upon themselves to notify members of the settlement class about the proposed settlement.  In particular, class counsel issued notice of the action by United States mail and by electronic mail to 2,163 class members.  (Lichten Decl. ¶ 3, ECF No. 59-2.)  Within several weeks of this notification, nearly 1,000 individuals had submitted claim forms.  (*Id.*)  At least two reminder notices were sent to class members.  (*Id.* ¶¶ 4-5.)  Approximately 250 notice packages were returned as undeliverable.  (*Id.* ¶ 7.)  After additional research on these individuals, class counsel report that there are approximately 50 individuals who they have been unable to reach. (*Id.*)  To date, approximately 1440 individuals have submitted claim forms. This represents two-thirds of the class members.  (*Id.* ¶ 6.)  Class counsel have not received any objections to the proposed Settlement, and have only received one request for exclusion.  (*Id.* ¶ 9.)

A hearing on the final approval of the proposed settlement was held on September 17, 2018.  During the hearing, the parties notified the Court of certain amendments to the payment terms contained in the Settlement Agreement.  The parties determined that these amendments

3

were necessary to address the declining financial condition of Optimum.  Based upon the parties'

representations at the hearing, the Court concluded that the Settlement Agreement, including the

proposed changes, was fair and reasonable.  The Court also concluded that the award of

attorneys' fees as requested by class counsel was fair and reasonable.

> **B.      The Proposed Settlement Agreement**

The proposed Settlement Agreement provides for a gross settlement amount of

$4,900,000.  (Settlement Agreement, Mot. Prelim Approval Ex. 1, ECF No. 52.)  The parties

have agreed that this amount will be distributed in three installments.  The first 50% of the gross

settlement amount, $2,450,000, will be wired to a settlement escrow account on or before

December 1, 2018.  (Proposed Am. Settlement Order ¶ 15 (on file with Court).)  The second

installment of $500,000 will be wired to the settlement escrow account on or before June 1,

2019.  Finally, the third installment of $1,950,000 will be wired to the settlement escrow account

on or before December 1, 2019.  (*Id.*)

The parties have also agreed to deduct the following amounts from the gross settlement:

(1) service awards of $7,500 for each of the named Plaintiffs; (2) attorneys' fees in an amount of

one-third of the gross settlement amount, or $1,633,333.33; and (3) class counsel's reasonable

out of pocket costs in an amount not to exceed $25,000.  These amounts subtracted from the

gross settlement amount results in a net settlement amount of $3,215,576.  (*Id.* ¶ 13(p).)  Each of

the "Eligible Class Members" will be paid a settlement award from this net settlement amount.

Eligible Class Members include the named Plaintiffs, any opt-in Plaintiffs and the settlement

class members who have submitted claim forms.  The amount of each award will be determined

in accordance with the number of overtime hours the Eligible Class Member worked during the

class period.  (Settlement Agreement ¶ 20.)[1]  Based on the number of claims that class counsel

has received, they predict that settlement class members who have submitted valid claims forms

will receive, on average, $1,487.57.  (Lichten Decl. ¶ 8.)

In exchange for this amount, the Settlement Class Members, including the named

Plaintiffs, will provide a release to Optimum that is limited to the alleged claims in the Amended

Complaint.  (Settlement Agreement ¶ 14.)  The release is not a general release, and only releases

claims related to wage and hour/unpaid overtime claims.  In addition, the release of FLSA claims

applies only to "Eligible Class Members," which includes Plaintiffs, Opt-in Plaintiffs, and

Settlement Class Members who submitted claim forms.  Those class members who did not

submit claim forms do not release their claims.

## II.    DISCUSSION

Our consideration will include (1) whether the proposed class action meets the

requirements of Rule 23 of the Federal Rules of Civil Procedure; (2) whether the proposed FLSA

settlement is fair and adequate, and (3) whether Plaintiffs' request for attorneys' fees and costs

merits approval.

### A.    Class Certification Under Rule 23

Class certification under Rule 23 has two components.  The party seeking class

certification must first establish the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

---

[1] Specifically, for each overtime hour worked during the class period, each "Eligible Class Member" will receive one (1) settlement share, and in recognition of the greater legal protections provided by Massachusetts and California laws (which provide greater damages than other states), for each overtime hour worked in Massachusetts and California, each Eligible Class Member will receive one and a half (1.5) settlement shares. The total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the net settlement amount to reach a per share dollar figure.  (Settlement Agreement.)

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 n.6.

"If all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified" under Rule 23(b). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 n.6. Plaintiff seeks certification under Rule 23(b)(3), which states that "[a] class action may be maintained if Rule 23(a) is satisfied and if: (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These are known as the predominance and superiority factors of Rule 23(b)(3).

The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). Certification is only proper "'if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 (footnote and quotation marks omitted).

      1.   <u>Numerosity</u>

Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the numerosity requirement "has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Plaintiffs have produced evidence

demonstrating that there are more than 2,000 members of the settlement class.  The numerosity requirement is met.

> 2.      Commonality

Plaintiffs must also demonstrate "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality does not require perfect identity of questions of law or fact among all class members.  Rather, 'even a single common question will do.'"  *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).  This requirement of class certification is easily met.  *Id*.  It is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Here, questions of fact and law are common to the proposed settlement class.  For example, issues to be litigated include (1) whether the class members were supposed to be paid the overtime wages when they worked over forty hours a week; and (2) whether Optimum's failure to pay overtime compensation violated the wage and hour laws of California, Connecticut, Illinois, Massachusetts, New Jersey, New York, North Carolina, Pennsylvania, and Washington.  These issues are common to all class members.  In fact, "cases involving wage claims present perhaps 'the most perfect questions for class treatment.'"  *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 756-57 (E.D. Pa. 2016) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)).  The commonality requirement is met.

> 3.      Typicality

Plaintiffs must also demonstrate that the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class.  Fed. R. Civ. P. 23(a)(3).  A district

court should determine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("[T]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." (citation and internal quotation marks omitted)).  In addition, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citation omitted).

There are four named Plaintiffs in this class action.  All of the named Plaintiffs worked as consultants for Optimum.  (Am. Comp. ¶¶ 3-6.)  Like other members of the proposed class, they allege that Optimum failed to pay them overtime wages for hours worked above forty hours per week.  Their claims arise out of the same policies and practices as claims of other members of the settlement class.  The incentives of the named Plaintiffs are aligned with those of the class. The typicality requirement is met.

4.    Adequacy

Finally, Plaintiffs must demonstrate that the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  This requirement concerns both:  (1) the "experience and performance of class counsel"; and (2) the "interests and incentives of the representative plaintiff[]." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beck v.*

*Maximus, Inc*., 457 F.3d 291, 296 (3d Cir.2006) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  Here, there have been no allegations from either side that the named Plaintiffs have any interests that are incompatible with the class members' interest.  In addition, class counsel have very diligently and competently pursued the claims of all class members.  The adequacy requirement has been satisfied.

     5. <u>Predominance and Superiority</u>

  "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Rule 23(b)(3), under which Plaintiffs seek final class certification, requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The four factors pertinent to the superiority inquiry are:

   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance requirement is easily met. Optimum had a uniform policy of misclassifying "Go-Live Consultants" as independent consultants instead of employees. This resulted in the consultants not receiving overtime compensation for hours worked in excess of forty in a work week. All of the named Plaintiffs and indeed, all members of the settlement class, are consultants who did not receive overtime pay when they were entitled to it. Thus, every member of the Settlement Class is seeking the same type of relief on the basis of the same legal claims against Optimum. Questions of law and fact common to the class members predominate over questions affecting only individual members.

The superiority requirement is also met. Even if individual class members had the resources to pursue individual claims against Optimum, the costs of pursuing such claims would likely exceed any recovery. *See Orloff v. Syndicated Office Sys., Inc*., No. 00-5355, 2004 WL 870691, at *5 (E.D. Pa. Apr. 22, 2004) ("A class action is superior to individual lawsuits by the Class members because it provides an efficient alternative to individual claims, and because individual Class members are unlikely to bring individual actions given the likelihood that their litigation expenses would exceed any potential recovery."). In addition, the class members' interests in having their claims adjudicated through the class action proceeding is revealed by the fact that approximately two thirds of the class members filed claims, and only one class member requested exclusion from the class.

Accordingly, we are satisfied that final certification of the class under Rule 23 is appropriate. Therefore, we will certify the proposed class for the purposes of settlement approval.

**B**.        **Approval of Settlement Agreement**

Rule 23(e) requires a district court to approve any settlement of a certified class before

settlement becomes final.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defense of a certified

class may be settled, voluntarily dismissed, or compromised only with the court's approval.").

"In evaluating a class action settlement under Rule 23(e), a district court determines whether the

settlement is fundamentally fair, reasonable, and adequate.  *Ehrheart v. Verizon Wireless*, 609

F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)).  This is because "[t]he purpose of

Rule 23(e) is to protect the unnamed members of the class."  *Id*. at 593; *see also In re Pet Food

Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010) ("Under Rule 23(e), trial judges bear the

important responsibility of protecting absent class members, which is executed by the court's

assuring that the settlement represents adequate compensation for the release of the class

claims." (citation omitted)).

Our inquiry is "even more rigorous" in cases like this one, "'where settlement

negotiations precede class certification, and approval for settlement and certification are sought

simultaneously.'"  *In re Pet Food Prod. Liab. Litig*., 629 F.3d at 350 (quoting *In re Warfarin

Sodium Antitrust Litig*., 391 F.3d 516, 534 (3d Cir. 2004)).  However, the Third Circuit has also

instructed that a presumption of fairness applies where:  "(1) the negotiations occurred at arms

length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in

similar litigation; and (4) only a small fraction of the class objected,"  *In re Nat'l Football

League Players Concussion Injury Litig*., 821 F.3d 410, 436 (3d Cir. 2016) (internal quotation

marks and citation omitted); *see also Altnor*, 197 F. Supp. 3d at 760 n.4 (discussing the tension

between a scrupulous examination and a presumption of fairness in ultimately concluding that a

presumption of fairness was warranted).

Here, the parties entered into mediation before retired U.S. Magistrate Judge Diane Welsh. Class counsel conducted an "in-depth factual investigation" into the claims and issues prior to mediation, which included a review of payroll and time records for each settlement class member. In addition, class counsel is experienced in state class action and FLSA collective action litigation. Finally, no class members have objected to the terms of the proposed settlement agreement, and only one person has sought to be excluded. Therefore, a presumption of fairness attaches. We will nevertheless perform a thorough examination in assessing the fairness, reasonableness, and adequacy of the proposed settlement agreement.

In *Girsh v. Jepson*, the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair and reasonable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974) (alterations omitted)); *In re Pet Food Prod. Liab. Litig*., 629 F.3d at 350. [2] We

---

[2] Subsequently, the Third Circuit advised that in light of the "sea-change in the nature of class actions," it may be useful for courts to consider the following factors in addition to the *Girsh* factors:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees

must make findings regarding the *Girsh* factors where appropriate. *Id.* "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

## 1. Complexity, Expense, and Likely Duration of the Litigation

"The first factor captures the probable costs, in both time and money, of continued litigation." *Barel v. Bank of Am.*, 255 F.R.D. 393, 400 (E.D. Pa. 2009) (citation and internal quotation marks omitted). The parties have advised the Court that if the proposed Settlement Agreement is not approved by the Court, they would need to undertake "time-consuming and expensive discovery" and engage in dispositive motion briefing. (Pls.' Settlement Br. 16, ECF No. 59-1.) In addition, litigation would prove complex in light of the fact that claims involved in this case fall under federal law as well as the wage laws of nine different states. This factor weighs in favor of approving the proposed settlement.

## 2. Reaction of the Class to the Settlement

Class counsel notified all 2,163 class members of the proposed settlement by mail and by electronic mail. At least two reminder notices were sent to class members. As a result of these efforts, approximately 1440 class members, or two-thirds of the total class, submitted claim forms. Class counsel did not receive any objections to the proposed settlement, and received only one request for exclusion. The class's reaction to the proposed settlement has been overwhelmingly positive. This further supports approval of the proposed Settlement Agreement.

---

are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). However, "[w]hile the Court must make findings as to the *Girsh* factors, the *Prudential* factors are merely illustrative of additional factors that may be useful." *Leap v. Yoshida*, No. 14-3650, 2016 WL 1730693, at *7 (E.D. Pa. May 2, 2016).

*See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that "only" 29 objections in 281 member class "strongly favors settlement").

   3. <u>The Stage of the Proceedings and the Amount of the Discovery Completed</u>

  "This factor captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had adequate appreciation of the merits of the case before negotiating."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (citation and internal quotation marks omitted).  Here, the parties represent that they have engaged in extensive discovery in preparation of the mediation before Judge Welsh.  In particular, they produced detailed Microsoft Excel spreadsheets containing payroll and timekeeping data for the settlement class.  This information allowed class counsel to calculate overtime hours worked and overtime compensation owed to each member of the class.  While this information was undoubtedly useful in calculating damages, it does not appear that the parties engaged in any other discovery, including depositions, to assist class counsel in evaluating the merits of the claims and defenses. As a result, this factor neither weighs in favor of, nor against, approval of the Settlement Agreement.

   4. <u>The Risks of Establishing Liability and the Risks of Establishing Damages</u>

  "These inquiries 'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement.'"  *In re Ikon Office Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).  The named Plaintiffs and the other class members faced a risk that they would be unable to establish that they were misclassified as independent contractors.  If litigation of this case were to continue, Optimum would likely argue that the class members were not employees entitled to FLSA protections but instead were

14

independent contractors.  In this regard, courts "look to the economic realities of the relationship in determining employee status under the FLSA." *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).  The Third Circuit instructs courts to look at six factors when determining whether a worker is an employee or a consultant under the FLSA:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)).

This multi-factor test is highly fact dependent, which creates a real risk that litigation could affect the Plaintiffs' ability to establish liability and damages.  In this regard, Plaintiffs have offered some possible risks associated with the factors:

> Optimum would assert that Consultants have specialized skills, and they are highly compensated (generally earning somewhere between $45 and $60 per hour) because of their expertise.  Optimum would likely claim that Consultants are responsible for developing the necessary proficiency to be able to perform the contracted services and do not receive training from Optimum in this regard. Moreover, they performed their work independently without any supervision or oversight by Optimum.
> . . .
> Optimum would cite to the fact that, most, if not all, of the consultants signed agreements with Optimum acknowledging their independent contractor status . . . . Finally, Optimum would claim that Consultants are not economically dependent upon Optimum, as they are able to use their own highly marketable skills to contract with numerous companies, and are not beholden to Optimum.

(Pls.' Settlement Br. 18-19.)  Under the economic realities test, Optimum has multiple arguments to make that would undermine a finding that the Plaintiffs were employees under the FLSA. Defendants may raise other arguments that present real risks to Plaintiffs' ability to prove

15

liability and damages.  As a result, this factor also weighs in favor of approving the Settlement

Agreement.

5.      The Risks of Maintaining the Class Action through Trial

There will always be a "risk" or possibility of decertification, and consequently the court

can always claim this factor weighs in favor of settlement.  *In re Prudential*, 148 F.3d at 321.

Therefore, "the manageability inquiry in settlement-only class actions may not be significant."

*Id.*  Nevertheless, Defendants would likely oppose certification of the class and could also seek

to decertify the class prior to trial.  This factor also weighs in favor of approval.

6.      Defendant's inability to Withstand a Greater Judgment

The parties represent that Optimum's ability to pay was an issue during settlement

negotiations.  In particular, the parties notified the Court about the uncertain financial health of

Defendant.  This factor weighs in favor of approving the settlement.

7.      The Range of Reasonableness of the Settlement in Light of the Best
        Possible Recovery and All Attendant Risks of Litigation

The final two *Girsh* factors assess "whether the settlement represents a good value for a

weak case or a poor value for a strong case."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d

516, 538 (3d Cir. 2004).  "[T]he ultimate test of the value of a settlement in the class context is

who gets what and how much."  *Id.*  Here, the Class Members will receive approximately 68% of

their actual damages.  This assumes that 80% of the Settlement Class Members filed claims.

(Lichten Decl. ¶ 8.)  In addition, those class members who have not opted into the Settlement

Agreement have retained their right to pursue FLSA claims and are free to pursue damages for

wage-related violations at a later date.  With regard to the risks of litigation, it is not clear which

party is likely to succeed at trial, let alone the amount of damages the class would receive if the

named Plaintiffs were to prevail.  The proposed settlement provides a degree of certainty for

16

those class members who have opted into the agreement that litigation would not.  Therefore, the range of reasonableness of the settlement in the light of possible recovery and the attendant risks of litigation weighs in favor of approving the Settlement Agreement.

Having examined the proposed Settlement Agreement in light of the *Girsh* factors, we are satisfied that the settlement is "fair, reasonable, and adequate."  *Girsh*, 521 F.2d at 157.

### C.   Service Awards to Named Plaintiffs

As part of the Settlement, the parties request that each of the four named Plaintiffs receive a service payment of $7,500.  This award is in exchange for the Plaintiffs' efforts in bringing and prosecuting this case.  In particular, the Plaintiffs "worked with class counsel, providing background information about their employment, about Optimum's policies and practices, and about the allegations in this lawsuit."  (Pls.' Settlement Br. 22-23.)  In addition, the named Plaintiffs "provided documents, . . . reviewed pleadings, and conferred with class counsel concerning litigation strategy."  (*Id*. at 23.)  Importantly, named Plaintiffs risked their employment reputation by participating in this class action.  Under the circumstances, the requested service award is appropriate.  *See Leap*, 2016 WL 1730693, at *10; *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class. In fact, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." (internal citation and quotation marks omitted)).

### D.   Approval of Attorneys' Fees

Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29

U.S.C. § 216(b).  The named Plaintiffs request Court approval of attorneys' fees for class

counsel in the amount of $1,633,333.33, which constitutes one-third (1/3) of the gross settlement

amount of $4,900,000.00.  The named Plaintiffs also request the Court to approve reimbursement

of class counsel's out-of-pocket costs, capped at $25,000.[3]

> 1.    *Percentage-of-Recovery*

In a case such as this, where class members recover from a single common fund, the

Third Circuit favors the percentage-of-recovery method in evaluating the fairness of attorneys'

fees.  *In re Prudential*, 148 F.3d at 333 ("The percentage-of-recovery method is generally

favored in cases involving a common fund, and is designed to allow courts to award fees from

the fund in a manner that rewards counsel for success and penalizes it for failure." (citation and

internal quotation marks omitted)).  In evaluating the fairness of the requested fees utilizing this

method, we must weigh the following seven factors:

> (1) the size of the fund and the number of persons benefitted; (2) the presence or
> absence of substantial objections by members of the class to the settlement terms
> and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys
> involved; (4) the complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by counsel; and (7)
> awards in similar cases.

*In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 301 (3d Cir. 2005) (citing *Gunter v. Ridgewood*

*Energy Corp*., 223 F.3d 190, 195 (3d Cir. 2000)).  "These fee award factors need not be applied

in a formulaic way and in certain cases, one factor may outweigh the rest."  *Id*.

Class counsel contends that all factors favor approval of the requested fees.  With regard

to the first factor, the settlement fund was 4.9 million dollars.  The settlement class members will

recover approximately 45% to 90% of their actual unpaid overtime hours worked, after attorneys

fees and costs are deducted.  (Lechtzin Decl. ¶ 9, ECF No. 57-2.)  This factor weighs in favor of

---

[3] As of August 3, 2018, the date that class counsel filed Plaintiffs' Unopposed Motion for
Approval of Attorneys' Fees and Costs, class counsel's costs total $21,091.56.

approving the attorneys' fees and costs.  As to the second factor, we note that, among the 2,238

settlement class members, there were no objections to the proposed settlement, and only one

class member opted out.  (*Id*.)  The third factor likewise weighs in favor of approving the fee

award as class counsel are highly skilled and experienced attorneys who are nationally

recognized for wage and hour class action lawsuits.  (*Id*. ¶¶ 3-4.)  The complexity of this case,

which includes FLSA claims and a myriad of wage hour claims under various state laws,

supports the requested fee.  As to the fifth factor, attorneys always risk nonpayment when they

accept cases on a contingency fee basis.  Three law firms representing the class members spent a

substantial number of hours to efficiently analyze the claims involved and negotiate a settlement.

Finally, the requested fee of one-third (1/3) of the gross settlement amount is reasonable in

comparison to awards in other cases.  *See Stagi v. Nat'l R.R. Passenger Corp*., 880 F. Supp. 2d

564, 571 (E.D. Pa. 2012) (citing cases and noting that fees in the Eastern District of Pennsylvania

range between 19% and 45% in common fund cases).

Based upon the representations of counsel, we are satisfied that the requested attorneys

fees and costs are justified by counsel's successful and efficient resolution of this matter and the

significant cash shares for the class members

### 2.    The Lodestar Method

"The Third Circuit has stated that it is sensible for district courts to cross-check the

percentage fee award against the lodestar method."  *Altnor*, 197 F. Supp. 3d at 766 (quoting *In re*

*Rite Aid Corp.*, 396 F.3d at 305).

> The lodestar award is calculated by multiplying the number of hours reasonably
> worked on a client's case by a reasonable hourly billing rate for such services
> based on the given geographical area, the nature of the services provided, and the
> experience of the attorneys.  The multiplier is a device that attempts to account for
> the contingent nature or risk involved in a particular case and the quality of the
> attorneys' work.  The lodestar cross-check serves the purpose of alerting the trial

> judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award . . . . The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.

*In re Rite Aid Corp.*, 396 F.3d at 305-07.

Here, class counsel represents that they have spent a total of 610 hours prosecuting this litigation. Based upon the attorneys' standard hourly rates, this results in a lodestar figure of $307,189.50. (Lechtzin Decl. ¶¶ 6-14; Lichten Decl. ¶¶ 10, 12, Pls.' Fees Br., ECF No. 57-4; Blanchard Decl. ¶¶ 6-8, ECF No. 57-5.) This represents an hourly rate of approximately $503 per hour. When calculated against the requested fee of $1,633,333.33, the lodestar multiplier is 5.3. This lodestar multiplier is certainly on the higher end of the range of reasonable multipliers. *See Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578, 2005 WL 1213926, at *16 (E.D. Pa. May 19, 2005) (noting that the Third Circuit recognizes "multipliers ranging from one to four" in common fund cases) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001)). However, in this case, class counsel undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation. We are satisfied with the reasonableness of the requested fee and we will approve class counsel's request for $1,633,333.33 in attorneys' fees. In addition, class counsel is entitled to be reimbursed for their litigation-related expenses in the amount of $21,091.56.

## III.      CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Approval of Settlement of Class and Collective Action and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**